Approved: _____

LINDSEY KEENAN
Assistant United States Attorney

Before:   THE HONORABLE PAUL E. DAVISON
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA            :    **COMPLAINT**

          - v. -                    :    Violations of 21 U.S.C.
                                         §§ 841, 846; 18 U.S.C. §
JOSE R. GARCIA,                     :    2, 111(a) and 1114.
BRAULIO MATA CORTOREAL,
ALFE ARACENA, and                   :    COUNTY OF OFFENSE:
YARLI JASMINE MENDOZA                    WESTCHESTER

                                         19m2117
          Defendants.

- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

        JOHN KERWICK, being duly sworn, deposes and says that he
is a Task Force Officer with the Drug Enforcement Administration
("DEA"), and charges as follows:

                          COUNT ONE

   (Possession with Intent to Distribute a Controlled Substance)

        1.   On or about March 1, 2019 in the Southern
District of New York, the defendants, JOSE R. GARCIA, BRAULIO
MATA CORTOREAL, and YARLI JASMINE MENDOZA intentionally and
knowingly did possess with intent to distribute a controlled
substance, in violation of 21 U.S.C. § 841(a)(1).

2

       2.    The controlled substance involved in the offense was 400 grams or more of a mixture and substance containing detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as Fentanyl, and 1 kilogram or more of a mixture and substance containing a detectable amount of heroin.

         (Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).)

## COUNT TWO

### (Conspiracy)

       3.    From at least on or about February 26, 2019 to on or about March 1, 2019, in the Southern District of New York, JOSE R. GARCIA, BRAULIO MATA CORTOREAL, and YARLI JASMINE MENDOZA, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

       4.    It was a part and an object of the conspiracy that JOSE R. GARCIA, BRAULIO MATA CORTOREAL, and YARLI JASMINE MENDOZA, the defendants, would and did possess with the intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

       5.    The controlled substances that JOSE R. GARCIA, BRAULIO MATA CORTOREAL, and YARLI JASMINE MENDOZA, the defendants, conspired to distribute and possess with intent to distribute were 400 grams and more of mixtures and substances containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as Fentanyl, and 1 kilogram or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. § 841(b)(1)(A).

     (Title 21, United States Code, Section 846; Title 18, United States Code, Section 2).

3

## COUNT THREE

(Possession with Intent to Distribute a Controlled Substance)

6.    On or about February 28, 2019, in the Southern District of New York, ALFE ARACENA, the defendant, intentionally and knowingly did possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

7.    The controlled substance involved in the offense was a mixture and substance containing detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as Fentanyl.

(Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).)

## COUNT FOUR

(Assaulting, Resisting, and Interfering with Arresting Officers)

8.    On or about March 1, 2019, in the Southern District of New York, JOSE R. GARCIA, the defendant, willfully and knowingly did forcibly assault, resist, oppose, impede, intimidate, and interfere with persons designated in Title 18, United States Code, Section 1114, while such persons were engaged in and on account of the performance of their official duties, to wit, GARCIA forcibly assaulted, resisted, and interfered with the arresting Task Force Officer for the Drug Enforcement Agency by colliding into him while evading arrest.

(Title 18, United States Code, Sections 111(a) and 1114.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

9.    I am a Task Force Officer with the DEA, and I have been personally involved in the investigation of this matter.  My duties and responsibilities include the investigation of narcotics offenses, among other crimes.  I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records.  Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation.

4

Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

10.   In or about December 2018, the DEA received information that an address on Euclid Avenue, in the Town of Greenburgh, New York (the "Euclid Avenue Address"), was being used as a base of operations for unlawful narcotics trafficking.

11.   On or about January 10, 2019, a pole camera was installed nearby the Euclid Avenue Address.  Based upon review of the pole camera footage, I have learned the following:

a.   Cars frequently arrived at the Euclid Avenue Address for short periods of time.

b.   On some occasions, cars parked at the base of the driveway, and a man I later learned to be JOSE R. GARCIA, the defendant, would leave the residence, sit in the cars for a few minutes, then return to the residence.

12.   On or about February 26, 2019, an additional camera was installed nearby the Euclid Avenue Address.  Based upon my review of the surveillance footage, I have learned the following:

a.   The windows of the upper floor of the residence at the Euclid Avenue Address were covered with sheets.

b.   On or about February 27, 2019, a Chevrolet Tahoe pulled into the driveway of the Euclid Avenue Address. JOSE R. GARCIA, the defendant, left the house carrying a large envelope, and got into the Tahoe.  About five minutes later, GARCIA returned to the house.

c.   On or about the same date, February 27, 2019, a Honda bearing New York registration T670361C (the "Honda") pulled into the driveway of the Euclid Avenue Address, and remained there.

d.   In the succeeding hours, on or about February 27, 2019, four other cars arrived, and remained in the driveway for a few minutes with their engines running.  Each time a new car arrived, a man left the residence, got in the car for a few minutes, and returned to the residence.

5

13.   On or about February 28, 2019, I was conducting surveillance at the Euclid Avenue Address.  I observed the following:

a.   The Honda was parked in the driveway of the Euclid Avenue Address.  In the afternoon, the Honda left for about two hours and when it returned the driver, who I later learned to be ALFE ARACENA, the defendant, entered the residence carrying two shopping bags.

b.   At approximately 8:50 p.m., a white Toyota bearing New York registration T670361C (the "Toyota"), arrived at the Euclid Avenue Address and dropped off a man, who I later identified ("CC"-1).  CC-1 entered the residence.

c.   At approximately 10:40 p.m., ARACENA and CC-1 got into the Honda and left the Euclid Avenue Address.

14.   On or about February 28, 2019, I and other law enforcement agents followed the Honda as it left the Euclid Avenue Address. I observed the following:

a.   At the intersection of Sprain Road and Jackson Road, in Greenburgh, New York, the Honda made a left turn with signaling or stopping at the stop sign.

b.   The Honda then merged onto the Sprain Brook Parkway without signaling a lane change as it entered southbound traffic.

15.   Based upon the information in Paragraph 14, above, I conducted a traffic stop of the Honda at approximately 11:00 p.m. on or about February 28, 2019.  During the traffic stop, the following occurred:

a.   ALFE ARCECENA, the defendant, provided his New York State Driver's License.

b.   ARACENA stated, in substance and in part, that he was an Uber driver, and was taking a fare to the Bronx.

c.   ARACENA consented to a vehicle search.

d.   In the pocket behind the driver's door, I found a pink ziploc bag containing a mixture and substance consistent with the appearance of approximately 10 grams of Fentanyl. I believe the substance to be Fentanyl based on its

6

appearance.  It is a fine, white, powder, packaged in a ziploc,
which was folded over and placed in another piece of plastic
sheeting.  Based on my training and experience, this is
consistent with the appearance and packaging of Fentanyl.

   e. ARACENA and CC-1 claimed they had never seen
the ziploc bag before.

   f. ARACENA stated, in substance and in part,
that anything in the house at the Euclid Avenue Address did not
belong to him, and he did not sell drugs.

Other law enforcement officers with whom I am working thereafter
applied to the Town of Greenburgh Justice Court for a warrant to
search the Euclid Avenue Address.  On or about March 1, 2019,
the Honorable Bonnie L. Orden, Town Justice of the Greenburgh
Justice Court, issued a search warrant for the Euclid Avenue
Address.

   16. On or about March 1, 2019, I and other law
enforcement officers executed the search warrant at the Euclid
Avenue Address.  Based upon my participation in the search, and
my conversations with other law enforcement officers who
participated in the search, I have learned the following:

   a. Law enforcement entered the residence,
repeatedly announced their presence, and stated they were there
to execute a search warrant.

   b. JOSE R. GARCIA, the defendant, was found
hiding in a closet with a bag.  Law enforcement officers
announced themselves, and told GARCIA that he should exit the
closet with his hands up.  GARCIA did not comply.  GARCIA threw
himself at law enforcement in an effort to escape the room.
GARCIA wrestled with the undersigned, crashing through a
sheetrock wall.  The bag with which GARCIA was hiding in the
closet contained mixtures and substance consistent with the
appearance of approximately two kilograms of Fentanyl, packaged
as two bricks.

   c. BRAULIO MATA CORTOREAL, the defendant, was
found by other agents in a hallway in the house.  CORTOREAL
attempted to push law enforcement out of the house.  CORTOREAL
stated, in substance and in part, that he lived at the house and
no other people were in the house.  In fact, when law
enforcement agents entered the house, GARCIA, and YARLI JASMINE

7

MENDOZA, the defendants, were both in the house in addition to CORTOREAL.

       d.   During the execution of the search warrant at the Euclid Avenue Address agents found mail addressed to CORTOREAL in a bedroom.

       e.   MENDOZA was found in a bedroom.  MENDOZA stated, in substance and in part, that the Euclid Avenue Address was leased in her name.[1]

       f.   Paraphernalia consistent with the large scale packaging of Fentanyl for distribution was found throughout the house in open view, including kilogram presses, and respirators.  In my training and experience, kilogram presses are used to package narcotics for distribution, and respirators are used to breathe safely when packaging narcotics.

       g.   The furniture in the house had hidden compartments containing additional mixtures and substances which in my training and experience are consistent with the appearance of approximately 5 kilograms of Fentanyl and 6 kilograms of heroin.  The substance consistent with the appearance of Fentanyl was a fine, bright, white powder.  The substance consistent with the appearance of heroin was powdery in texture, and tannish in color.  In my training and experience, the packaging of both substances in plastic baggies was consistent with the packaging of narcotics.

       h.   Baggies and plastic wrap, which in my training and experience are used to package narcotics were found throughout the house.

    17.   I have spoken with the law enforcement officer who conducted MENDOZA's post-arrest interview.  MENDOZA was *Mirandized*.  MENODZA waived her *Miranda* rights, and stated, in substance and in part the following: Since in or about December 2018, she has seen JOSE R. GARCIA and BRAULIO MATA CORTOREAL, the defendants, at the Euclid Avenue Address, packaging narcotics.

---

[1] On or about March 1, 2019, I obtained a copy of the lease from the homeowner.  The lease is in fact held in the name of a third party.

8

18.   Based upon my training, experience, and participation in this investigation, and conversations with law enforcement who executed the search warrant on the Euclid Avenue Address, I believe that JOSE R. GARCIA, BRAULIO MATA CORTOREAL, and YARLI JASMINE MENDOZA, the defendants, possessed with intent to distribute 400 grams or more of mixtures and substances containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as Fentanyl, and one kilogram or more of a mixture and substance containing a detectable amount of heroin.

WHEREFORE, deponent respectfully requests that JOSE R. GARCIA, BRAULIO MATA CORTOREAL, ALFE ARACENA, and YARLI JASMINE MENDOZA, the defendants, be imprisoned or bailed, as the case may be.

TASK FORCE OFFICER JOHN KERWICK
DRUG ENFORCEMENT ADMINSTRATION


Sworn to before me this
1st day of March 2019


THE HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK